UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK LEWIS NOWELL, *et al.*, | ) | |
| Individually and as Next of Kin of | ) | |
| C.M.N., a minor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:13-CV-702-WKW |
| | ) | [WO] |
| DALE COUNTY BOARD OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is a motion to dismiss filed by Defendants Dale County Board of Education, Chuck Walker, and Lisa Welch, (Docs. # 10, 11), to which Plaintiffs Mark Lewis Nowell and Susan Jean Nowell have responded, (Doc. # 21). Upon consideration of the complaint, the parties' arguments, and the relevant law, the court concludes that the motion to dismiss is due to be granted in part and denied in part.

### I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.  BACKGROUND

Plaintiffs are the parents of C.M.N.  C.M.N. was a student at G. W. Long Elementary School ("the school") from kindergarten until the middle of his sixth-grade year.  The school is under the administration of Defendant Dale County Board of Education ("the Board").  At the time of the incidents at issue in Plaintiffs' complaint, Defendant Lisa Welch was the principal of the school and Defendant Chuck Walker was the vice principal of G. W. Long High School.

On September 27, 2011, C.M.N. and another sixth-grade boy got into a skirmish, allegedly initiated by the other boy.  Ms. Welch directed the teacher who

witnessed the events to write up the incident and refer the boys to her office.  Ms. Welch met with both boys and gave them the option of choosing one day of in-school suspension or a paddling that would consist of two strikes on the buttocks. The next morning, the boys informed Ms. Welch that they each preferred a paddling.  Both Plaintiffs spoke to Ms. Welch on the phone prior to C.M.N.'s paddling.  Mr. Nowell particularly questioned Ms. Welch's story, as it differed from C.M.N.'s account of events.  Ms. Welch allegedly denied Mr. Nowell access to video of the incident.  Mr. Nowell claims that he and Ms. Welch agreed that she would delay paddling C.M.N. until Mr. Nowell could discuss the incident further with her.

In spite of this agreement, Ms. Welch proceeded to mete out the punishment. Normally, Ms. Welch would have asked faculty member Coach Kelly to administer the paddling, but Coach Kelly was absent on September 28, 2011. Instead, Ms. Welch recruited Mr. Walker, who agreed to stand in.  Around 2:00 p.m. on September 28, Mr. Walker paddled both boys in Ms. Welch's office. Neither boy witnessed the other's paddling.  The boys were sent back to their classrooms afterward.

That night, Plaintiffs asked C.M.N. about the corporal punishment he had received.  C.M.N. relayed the following information about his experience in Ms. Welch's office.  He told them that after Mr. Walker struck him the first time, he

hopped around and tried to walk it off because the paddling had hurt.  Mr. Walker asked C.M.N. where he thought he was going.  C.M.N. said he thought he could leave and come back after the other boy got his second strike.  Mr. Walker told him that the other boy had gotten both of his strikes already.  C.M.N. did not believe the other boy had been paddled as hard as he had because when the other boy walked out of Ms. Welch's office, he "barely had tears in his eyes."  (Doc. # 1, at ¶ 15.)  C.M.N. asked if he could wait another minute until his backside stopped hurting, but Ms. Welch insisted upon following through with the second strike.  Mr. Walker then told the boy to put his hands on the wall and warned him that the second strike would be harder "[s]ince you went for the door."  (Doc. # 1, at ¶ 15.)  According to C.M.N., the second strike was much harder than the first. C.M.N. reported that he could not stop crying afterward.

After C.M.N. told his parents about the paddling, he showed his parents his backside.  Plaintiffs report that C.M.N.'s bottom was red and bruised badly with a three-and-a-half-inch mark on one buttock and a four-inch mark on the other.  Mr. Nowell immediately called Ms. Welch.  Ms. Welch said she had not seen the marks, was not apologetic, and refused to meet with Plaintiffs and Mr. Walker.  C.M.N. continued to complain about pain.  Plaintiffs called the Dale County Sheriff who sent a deputy to Plaintiffs' home.  The deputy had Mrs. Nowell photograph the injuries.  Plaintiffs also took C.M.N. to the pediatrician on

September 29, 2011.  The pediatrician diagnosed severe soft tissue damage and told Plaintiffs that C.M.N. would remain in pain for several days.  The pediatrician also referred C.M.N. to a child counselor and had a nurse contact the Department of Human Resources ("DHR").  DHR referred Plaintiffs back to the Sheriff, who had another officer take pictures with a ruler to show the size of the injuries.

In early October 2011, Plaintiffs filed a complaint in letter form with the school that explained that C.M.N. required medical care and counseling after Mr. Walker paddled him.[1]  The Superintendent of the Board responded by letter acknowledging receipt of the complaint and explained his belief that the corporal punishment was in accordance with Board policy.  Plaintiffs requested and received a hearing before the Board.  Mr. Walker and Ms. Welch attended the hearing and presented written statements.  Plaintiffs submitted photos of C.M.N.'s injuries.  On November 10, 2011, the superintendent informed Plaintiffs by letter that the Board denied their appeal and upheld the superintendent's resolution of the matter.

Plaintiffs also complain about a separate series of incidents besides the paddling.  During August, September, and October of 2011, school faculty members repeatedly denied C.M.N.'s requests to drink water from water fountains or to drink his own bottle of water or Gatorade in spite of C.M.N.'s thirst after

---

[1] The Complaint is not clear as to what relief Plaintiffs sought, but it is clear that they requested that some sort of action be taken.

physical education class. C.M.N. was penalized in various ways for having something to drink or for trying to get something to drink, but the punishment was not corporal.

On October 28, 2011, Plaintiffs felt compelled to remove C.M.N. from the school because C.M.N. was physically and emotionally traumatized by the paddling incident. On September 27, 2013, Plaintiffs filed an eleven-count complaint in this court seeking damages. Counts I–IX are state-law tort claims. Counts X and XI are federal-law constitutional claims arising under the Eighth and Fourteenth Amendments.[2]

## IV.  DISCUSSION

Defendants raise numerous arguments in support of their motion, the most fundamental of which, for jurisdictional purposes, is that Plaintiffs fail to state federal constitutional claims upon which relief can be granted.

**A.      Federal-Law Claims**

As a fundamental issue, Defendants criticize the Complaint as lacking reference to an enabling statute by which Plaintiffs are pursuing judicial relief for alleged constitutional violations. (Doc. # 11, at 2.) Plaintiffs assert in response that they pursue this action pursuant to 42 U.S.C. § 1983. (Doc. # 21, at 2.)

---

[2] It is unclear in the Complaint whether Count XI is a claim for Defendants' violation of C.M.N.'s procedural or substantive due process rights. The opposition brief seems to indicate both procedural and substantive due process are at stake.

Defendants argue that the two harms alleged in the complaint – *i.e.*, the administration of corporal punishment and the repeated denial of the opportunity to drink water – do not rise to the level of cognizable constitutional torts.  Defendants contend at the outset that "[e]xcessive force [and] corporal punishment cases are not matters of federal jurisdiction."  (Doc. # 11, at 3.)  That statement is not accurate.  Corporal punishment complaints may rise to the level of a violation of substantive due process and thus be brought in federal court.  *See, e.g.*, *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (corporal punishment case) ("[W]e think for a number of reasons that a student-plaintiff alleging excessive corporal punishment can in certain circumstances assert a cause of action for a violation of his rights under the Fourteenth Amendment's Due Process Clause.").[3]  However, prior to *Neal*, federal courts in this circuit followed a decision of the former Fifth Circuit:  *Ingraham v. Wright*, 525 F.2d 909 (5th Cir. 1976) (en banc), *aff'd*, 430 U.S. 651 (1977).

In *Ingraham*, two junior high school students brought federal civil rights claims against school administrators.  525 F.2d at 911.  As discipline for disrupting a class, one plaintiff was forced into a paddling position and given twenty blows to his backside that required medical treatment and caused discomfort lasting three weeks.  *Id.*  The plaintiff alleged that his subjection to paddling constituted cruel

---

[3] Defendants acknowledge and discuss *Neal* later in their brief (Doc. # 11, at 7–8).

and unusual punishment, a deprivation of substantive due process, and a denial of procedural due process.  The Fifth Circuit held that "the administration of corporal punishment in public schools, whether or not excessively administered, does not come within the scope of Eighth Amendment protection." *Id.* at 915.  Likewise, the court held that corporal punishment did not violate the plaintiff's substantive due process rights because the school board's paddling policy was not arbitrary, capricious, or wholly unrelated to legitimate state purposes of maintaining discipline and order in schools.  *Id.* at 916–17.  Finally, the court held that "procedural safeguards accompanying the use of corporal punishment in public schools are not constitutionally mandated." *Id.* at 918.

The Supreme Court affirmed the Fifth Circuit, addressing the Eighth Amendment and Fourteenth Amendment procedural due process arguments. *Ingraham v. Wright*, 430 U.S. 651, 683 (1977).  It declined to review the plaintiffs' arguments that excessive corporal punishment violated substantive due process, but explained that "where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, . . . Fourteenth Amendment liberty interests are implicated." *Id.* at 674.

A court in this district relied on *Ingraham* in *Gaither v. Barron*, 924 F. Supp. 134 (M.D. Ala. 1996), and dismissed a plaintiff's federal claims after reasoning

8

that "state criminal and civil actions . . . available to students exposed to [corporal] punishment . . . are the appropriate check" on school officials who excessively punish students. *Id.* at 136. Similarly in *Hale v. Pringle*, 562 F. Supp. 598 (M.D. Ala. 1983), the court interpreted *Ingraham* as precluding a plaintiff's federal procedural and substantive due process claims arising from a school paddling incident.

But "*Ingraham* did not say that under no set of circumstances could corporal punishment rise to the level of a constitutional violation." *Neal*, 229 F.3d at 1073. Thus, in *Neal*, the Eleventh Circuit permitted the plaintiff's substantive due process claim to survive the defendant's motion to dismiss because the corporal punishment alleged was excessive and "not administered in conformity with a valid school policy authorizing corporal punishment." *Id.* at 1075. However, the Circuit made clear that substantive due process claims arise only when state conduct "'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* at 1074 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)). The court explained further that

> [t]he concept of conscience-shocking duplicates no traditional category of common law fault, but points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. That is to say, conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.

9

*Id.* (internal citations and quotation marks omitted).  Thus, the court admonished, "the Fourteenth Amendment is not a font of tort law [to] be used, through section 1983, to convert state tort claims into federal causes of action." *Id.*

Defendants cite the same relevant portions of *Neal* in their brief.  To the extent that Defendants argue that Plaintiffs' factual allegations in this case are insufficient to support the conscience-shocking level of injury required to sustain a substantive due process claim, Defendants' argument is well-taken.[4]  *Neal* forecloses a substantive due process claim in this case, despite Plaintiffs' arguments to the contrary.

Plaintiffs are undeterred by the high standard that corporal punishment must shock the conscience.  They also cite *Neal*'s requirement that, "at a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Neal*, 229 F.3d at 1075.  To determine whether force was "obviously excessive," the court must consider the "totality of the circumstances," particularly "(1) the need for the application of corporal punishment, (2) the relationship between the

---

[4] But the court rejects Defendants' proposition that school-sanctioned corporal punishment is always beyond the realm of federal court jurisdiction.

need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id.*.[5]

Citing these factors, Plaintiffs assert that C.M.N. suffered an excessive application of force that caused physical injury and ongoing psychological trauma. But, focusing on the objective standard for "obviously excessive" force, it is apparent that Mr. Walker's application of two licks to C.M.N.'s buttocks was for a punitive purpose and was in accord with Board policy. Even if Mr. Walker paddled C.M.N. harder than necessary, the alleged "extent of injury inflicted," *id.*, is not sufficiently severe. The Eleventh Circuit has dismissed the constitutional claims of plaintiffs who have endured similarly severe injuries arising from corporal punishment. *See T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 603 (11th Cir. 2010) (on four different occasions, a teacher (1) sat on a student to restrain him, (2) forced him to the floor in an uncomfortable position, (3) twisted his arm and shoved him into a wall, and (4) pinned his arms behind his back, all causing transient pain, minor bruising, and psychological trauma); *Peterson v. Baker*, 504 F.3d 1331, 1338 (11th Cir. 2007) (a teacher

---

[5] Plaintiffs also cite the standard enunciated by the Fourth Circuit. *See Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980) ("The substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."). As the Eleventh Circuit has its own law for substantive due process violations in the context of excessive corporal punishment, the court looks to that standard.

"choked" student, causing him to temporarily struggle to breathe and leaving blue and red bruises and a scratch on his neck). On the other hand, more conscience-shocking injuries have been deemed legally adequate to support constitutional claims. *See Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904 (11th Cir. 2003) (denial of summary judgment affirmed where a principal repeatedly struck a non-resisting student with a metal cane, including once on the head); *Neal*, 229 F.3d at 1076 (vacating summary judgment in defendant's favor where a coach struck student in the eye with a weight lock, knocking the eye out of its socket). In view of the totality of the circumstances and the relevant case law, C.M.N. did not endure corporal punishment that was conscience-shocking.[6]

As for an Eighth Amendment excessive force claim or a Fourteenth Amendment procedural due process claim, the Supreme Court has clearly said that "the Eighth Amendment does not apply to the paddling of children as a means of maintaining discipline in public schools," *Ingraham*, 430 U.S. at 664, and "the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools [because corporal punishment] is authorized and limited by the common law," *id.* at 682. Accordingly, Defendants'

---

[6] In their brief, Plaintiffs scarcely mention the issue of teachers preventing C.M.N. from drinking water when he was thirsty. (*See* Doc. # 11 at 2.) Being prevented from drinking water could be punitive, but Plaintiffs cite no authority, and the court is aware of none, that this alleged deprivation is corporal punishment. Even if Plaintiffs include these deprivations as part of a substantive due process claim, they likewise fail to shock the conscience.

12

Rule 12(b)(6) motion to dismiss is due to be granted with respect to Plaintiffs' federal-law constitutional claims.

Defendants also argue the any claim against Mr. Walker or Ms. Welch in their official capacities is equivalent to, and duplicative of, the same claim against the Board. (Doc. # 11, at 9–10 (citing *Kentucky v. Graham*, 473 U.S. 159 (1985); *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).) Because the court has determined that no federal-law claim under § 1983 survives, this argument is moot.

### B.     Remaining State-Law Claims

Plaintiffs' remaining claims (Counts I–IX) are state-law claims. A district court may decline to exercise supplemental jurisdiction over state-law claims when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). While the decision to exercise supplemental jurisdiction is discretionary, the Eleventh Circuit "ha[s] encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). In this instance, the court declines to exercise supplemental jurisdiction over state-law claims. These claims are due to be dismissed without prejudice should Plaintiffs wish to refile the claims in state court. *See* 28 U.S.C. § 1367(d) (tolling "the period of limitations" on state-law claims while the claim is pending in federal

court and "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

## V. CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that Defendants' motion to dismiss (Doc. # 10) is GRANTED to the extent that Plaintiffs' federal-law claims (Counts X & XI) are DISMISSED with prejudice pursuant to Rule 12(b)(6). Defendants' motion to dismiss the remaining state-law claims (Counts (I–IX) is DENIED as moot.

It is ORDERED that Plaintiffs' state-law claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3) and the tolling provision of 28 U.S.C. § 1367(d).

A separate final judgment will be entered.

DONE this 24th day of April, 2014.

                                                    /s/ W. Keith Watkins
                                    CHIEF UNITED STATES DISTRICT JUDGE